UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSE L. NEGRON, | ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION<br>NO. 4:16-CV-40150-TSH |
| v. | ) ) ) | |
| THOMAS TURCO, III, ABBE NELLIGAN,<br>COLETTE GOGUEN, LUIS MELENDEZ,<br>and LORI CRESEY | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

### September 7, 2017

**HILLMAN, D.J.**

Before the Court are Plaintiff's Motion to Amend Complaint (ECF No. 74), Plaintiff's Motion to Amend Complaint and Substitute Party (ECF No. 75), and Plaintiff's Motion for Preliminary Injunction. (ECF No. 76). Remaining defendants[1] Thomas Turco, III, Abbe Nelligan, Collette Goguen, and Luis Melendez have opposed the motions, along with proposed defendant Lori Cresey. For the reasons stated below, plaintiff's motions to amend are allowed in part and denied in part, the Second Amended Complaint is dismissed except as to Counts III and Count IV, and the motion for a preliminary injunction is denied.

---

[1] Of the original defendants, only four remain. Defendants Thomas Dickhaut, Kelly Ryan, and Lois Russo, who did not file an answer or motion to dismiss, were voluntarily dismissed by the plaintiff on April 28, 2017. *See* Plaintiff Stipulation to dismiss the Following Defendant named in the Original and Amended Civil Complaint. ECF No. 66; Fed. R. Civ P. 41(a)(2)(i).

## Background

On October 17, 2016, *pro se* prisoner plaintiff Jose Negron filed a voluminous complaint against defendants Thomas Turco, III, Commissioner of the Department of Corrections, Thomas Dickhaut, Deputy Commissioner Department of Corrections, Kelly Ryan, Superintendent of MCI Shirley, Lois Russo, Superintendent of MCI Concord, Colette Goguen, Superintendent of MCI Gardner, Abbe Nelligan, Deputy of Classification, and Luis Mendez, Internal Perimeter Commander. Along with his complaint, plaintiff filed a motion to proceed *in forma pauperis*, a motion for preliminary injunction, and a motion for appointment of counsel.

On November 4, 2016, plaintiff filed a motion to amend his complaint. On November 16, 2016, the Court allowed the motion to proceed *in forma pauperis*, assessed an initial filing fee, denied the motion for appointment of counsel without prejudice, and allowed the motion to amend the complaint.

On February 8, 2017, defendants Turco, Nelligan, Goguen, and Melendez filed a joint motion to dismiss the complaint. On February 21, 2017, plaintiff opposed the motion to dismiss.

On April 14, 2017, with leave of court, defendants Turco, Nelligan, Goguen, and Melendez responded to the motion for preliminary injunction. On April 28, 2017, plaintiff filed a "stipulation of dismissal" of defendants Thomas Dickhaut, Kelly Ryan, and Lois Russo, substantially narrowing the scope of this action. All claims against these defendants will be dismissed without prejudice.

On May 11, 2017, plaintiff filed a motion for leave to file a supplemental amended complaint and for joinder. The remaining defendants opposed the motions.

On May 26, 2017, the court issued a Memorandum and Order providing the plaintiff with

a final opportunity to amend and supplement his complaint to conform to the basic rules of civil procedure. Plaintiff filed two motions to amend the complaint, a Notice of Clarification concerning the exhibits to the complaint, and a motion for a preliminary injunction. All of these motions are timely opposed.

The following allegations are taken from the Second Amended Complaint, and documents referred to therein, and are accepted as true only for purposes of the Court's screening of the Second Amended Complaint.

*Plaintiff's Reclassification from SBCC to MCI - Concord*

Plaintiff is currently an inmate at Souza-Baranowski Correctional Center, a maximum security prison in Shirley, Massachusetts. Second Amended Compl. ¶ 3. In February 2015, plaintiff sought a reclassification from SBCC. During this process, plaintiff alleges that he renewed his safety and security concerns about his disassociation and bad standing with Security Threat Group ("STG") Latin Kings (the "STG Concerns"). Second Amended Compl. ¶10.

On April 15, 2015, plaintiff wrote a letter to prison administrators expressing his STG Concerns relating to his proposed new placement. Second Amended Compl. ¶ 11. The letter is not attached to the complaint.

On April 22, 2015, plaintiff was notified by prison administration that his STG Concerns would be forwarded to defendant Lori Cresey, Director of Central Classification. Second Amended Compl. ¶ 12.

On May 5, 2015, defendant Abbe E. Nelligan, Deputy Classification Director, reviewed the appeal and modified the placement. Second Amended Compl. ¶13. Nelligan sustained the re-classification to medium security but modified the location to MCI-Concord. Second Amended

Compl. ¶13. Plaintiff alleges that Nelligan knew of, and disregarded, plaintiff's STG Concerns. Second Amended Compl. ¶¶ 9-11.

*Plaintiff Allegedly Given the Option of Protective Segregation or General Population at MCI – Concord*

On May 12, 2015, plaintiff was transferred to MCI - Concord. Second Amended Compl. ¶14. Plaintiff was met by non-defendant, Inner Perimeter Security ("IPS") Officer Juan Ayala, a "subordinate" of defendant Luis Melendez who "reconfronted about old wounds." Second Amended Compl. ¶15. MCI-Concord personnel were apparently aware of the plaintiff's STG Concerns because at some point in May, plaintiff was "confronted" by non-defendant, IPS Sergeant Kahn and was provided two options: "spend the summer in the hole" or sign a waiver to be released to general population. Second Amended Complaint, ¶ 16. According to the plaintiff, he chose to sign the waiver under "duress/coerced" and was released to general population. Second Amended Compl. ¶16.

*Plaintiff Allegedly Assaulted at MCI – Concord Because of His Disassociation Hearing and Activities At MCI – Concord*

On August 18, 2015, plaintiff filed a "request and complaint" to Inner Perimeter Security claiming that he was no longer affiliated with the Latin Kings and that his STG status should be changed. Second Amended Compl. ¶17, Exhibit C(1). On August 27, 2015, plaintiff attended an STG Renouncement interview. Second Amended Compl. ¶ 18. Plaintiff claims that in September 2015 he was confronted by an STG member about the IPS meeting and renouncement. Second Amended Compl. ¶19. Plaintiff claims the renouncement process was allegedly exposed to STG members at MCI – Concord by unnamed prison personnel. Second Amended Compl. ¶20. Plaintiff confronted IPS Officer Ayala about the purported leak of information. Second Amended Compl.

4

¶ 21. According to plaintiff, IPS Officer Ayala is a family member of defendant Melendez. Second Amended Compl. ¶23. IPS Officer Ayala warned plaintiff and told him to mind his own business. Second Amended Compl. ¶22-23.

On September 16, 2015, plaintiff was assaulted by STG members. Second Amended Compl. ¶24. While at the MCI – Concord Health Service Unit, plaintiff was informed by Officer Ayala that due to safety concerns he would not be being released from segregation. Second Amended Compl. ¶25. Plaintiff claims he was placed in segregation for non-disciplinary reasons due to conflict and was not provided an emergency re-classification hearing. Second Amend. Compl. ¶26.

On September 29, 2015, plaintiff alleges that a "subordinate" frivolously filed a disciplinary report against plaintiff. Second Amended Compl. ¶ 28.

Plaintiff initiated formal and informal complaints. Second Amended Compl. ¶27. During the grievance process, plaintiff wrote a letter to Nelligan on September 20, 2015 (not attached to the Second Amended complaint) concerning his placement at MCI-Concord. Second Amended Compl. ¶ 29. In response, Nelligan declined to reclassify the plaintiff immediately, and sent a copy of plaintiff's letter to the Deputy Superintendent at MCI-Concord for further "appropriate" action, writing:

> I am in receipt of your letter dated September 20, 2015 regarding your placement at MCI-Concord and request for alternate placement. As you are aware, this office deemed you appropriate for placement at MCI-Concord on May 5, 2015. Please be advised that at that time, you did not have any identified conflicts at MCI-Concord to exclude you from placement there. Any request or alternate replacement will be considered via your next scheduled board. Please contact staff at MCI-Concord to inquire about when your next board will be scheduled. Lastly, a copy of your letter has

been forwarded to the administration at MCI-Concord for any appropriate action.

October 9, 2015 Letter from Abbe Nelligan to Jose Negron, ECF No. 75-3, Exhibit B(3), p. 4. Plaintiff claims that an unnamed "subordinate" of the defendants filed an unnecessary disciplinary report. Second Amended Compl. ¶ 28. Plaintiff alleges that he contacted Thomas Turco regarding the staff misconduct but he declined to investigate. Second Amended Compl. ¶30. Plaintiff claims that Defendant Turco's subordinate denied plaintiff an emergency classification. Second Amended Compl. ¶31.

*Plaintiff Reclassified to MCI Shirley*

On December 9, 2015, plaintiff attended a reclassification hearing at MCI –Concord. Second Amended Compl. ¶32. Board members Jason Lapomardo, Dave Stack, and Kevin McFadden recommended unanimously that he be transferred to MCI –Shirley. Second Amended Compl. ¶32, ECF No. 75-3, Exhibit B(4), p.5. Plaintiff claims that his appeal was never filed because a Corrections Officer (Dave Stack) forgot to submit the appeal. Second Amended Compl. ¶ 34. Plaintiff alleges that defendant Cresey knowing of the STG Concerns at Shirley did nothing to prevent him from being placed there. Second Amended Compl. ¶35.

*Plaintiff Transferred to MCI Shirley and placed in SMU for Protection*

On December 23, 2015, plaintiff was transferred to MCI – Shirley. Second Amended Compl. ¶36. On December 29, 2015, plaintiff was placed in segregation due to conflict with Latin Kings. Second Amended Compl. ¶37. IPS received information that plaintiff would be assaulted if placed back into general population. Second Amended Compl. ¶ 38. Plaintiff requested an emergency re-classification which was denied. Second Amended Compl. ¶ 41. On April 4, 2016,

after spending 97 days in segregation, defendant Lori Cresey modified plaintiff's placement to NCCI Gardner, with a statement to monitor plaintiff closely. Second Amended Compl. ¶ 42.

Three months later, on June 21, 2016, a "subordinate" of Melendez allegedly retaliated against the plaintiff with a "frivolous" disciplinary report. Second Amended Compl. ¶44. Two and one half months later, on September 7, 2016, a "subordinate" of defendant Melendez retaliated against plaintiff with a "baseless ticket" and "false" criminal charge. Second Amended Compl. ¶45.

On October 17, 2016, plaintiff filed this lawsuit. On November 7, 2016, defendant Melendez confronted plaintiff about the lawsuit. Second Amended Compl. ¶48. On November 14, 2016, defendant Melendez retaliated against plaintiff, apparently by defendant's "subordinate" denying plaintiff from participating in a disciplinary hearing and making false statements in the summary finding. Second Amended Compl. ¶49.

On December 19, 2016, plaintiff was reclassified and voted to be moved to maximum security at SBCC. Second Amended Compl. ¶50. On December 29, 2016, plaintiff appealed to defendant Lori Cresey. Second Amended Compl. ¶51. On January 23, 2017, plaintiff was restricted to the protective custody unit. Second Amended Compl. ¶52. On March 17, 2017, a "subordinate" interviewed plaintiff about STG validation status. Second Amended Compl. ¶54. Plaintiff alleges that the "subordinate" failed to provide procedural due process after learning of the lawsuit. Second Amended Compl. ¶55. On May 18, 2017, the Board of Classification recommended releasing plaintiff back to general population. Second Amended Compl. ¶56. The Board purportedly stated that placement into protective custody was unreasonable. Second Amended Compl. ¶57.

**Discussion**

*A.  Motions to Amend the Complaint and Notice of Clarification*

Plaintiff's motions to amend the complaint are construed as motions for clarification of the Court's May 26, 2017 Memorandum and Order, and are <u>ALLOWED</u> in part and <u>DENIED</u> in part, only to the extent that leave to file the Second Amended Complaint is allowed and Lori Cresey is added as a defendant to this action. The Second Amended Complaint captioned Plaintiff's Amended Supplemental Complaint (ECF No. 75-2 and 75-3) is the operative complaint. This complaint supersedes the prior complaints. All other and further relief in the motions to amend the complaint are <u>DENIED</u>.

Plaintiff seeks to incorporate by reference all of the previously filed exhibits in his notice of clarification and permission for leave to correct record. Defendants object to the destruction of documents filed in this case. The Court agrees with defendants' contention; however, the Court does not interpret the plaintiff to be requesting the Court to impermissibly expunge the record. Rather, it appears plaintiff is seeking to incorporate by reference documents already filed in this action that are pertinent to his Second Amended Complaint. The Court reconsiders and clarifies its May 26, 2017 Order, and the plaintiff's request is <u>ALLOWED</u> but only to the extent that documents are specifically referred to and identifiable in the Second Amended Complaint. All other and further relief is <u>DENIED</u>.

*B.  Screening of the Second Amended Complaint*

Because plaintiff is proceeding *in forma pauperis* his Second Amended Complaint is subject to screening pursuant to 28 U.S.C. §1915(e)(2)(B) and §1915A. Those statutes authorize federal courts to dismiss complaints *sua sponte* if the claims are frivolous, malicious, fail to state

a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. §1915A. In connection with this screening, plaintiff's *pro se* complaint is construed generously. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court's review is for adequacy of notice pleading and not a determination of the merits of the claims. The Court must determine whether there are "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court accepts as true, for purposes of this screening only, the well-pleaded factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff. *See Eldredge v. Town of Falmouth*, 662 F.3d 100, 104 (1st Cir. 2011). As set forth in more detail below, the Second Amended Complaint is <u>DISMISSED</u>, except as to Counts III and IV.

        1.        Count I – Grievance System – All Defendants

Plaintiff's claim in Count I is brought against defendants purportedly because:

> …all have acted [with] bias and prejudice to plaintiff's grievances denying every complaint filed on the subject herein. The Grievance system is rigged with prejudice (sic) behavior, the defendants are the appeal authority in making their decision to their own violations a serious conflict matter in the grievance system no corrective plan is available with the violators having the power of law to promulgate and correct the ongoing deprivation of liberty…"

Second Amended Compl. ¶60. Plaintiff's indictment of the Department of Corrections grievance system fails to state a claim upon which relief may be granted. Under the Prison Litigation Reform Act, "[t]he failure of a State to adopt or adhere to an administrative grievance procedure shall not

9

constitute the basis for an action under section 1997a or 1997c of this title." 42 U.S.C.A. § 1997e(b). Moreover, a prisoner has no liberty interest in a grievance system or failure to investigate a prisoner's claims. *See Leavitt v. Allen*, 46 F.3d. 1114 (1st Cir. 1995)(unpublished decision); *George v. Smith,* 507 F.3d 605, 609–10 (7th Cir.2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Accordingly, Count I is dismissed against Turco, Goguen, Melendez, Nelligan and Cresey, pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

    2.    Count II – 42 U.S.C. §1983 - Defendants Nelligan, Cresey, and Turco

        a.    Violations of State Regulations Not Cognizable under §1983.

Plaintiff's claims against defendants Nelligan, Cresey and Turco for violations of state regulations are not cognizable under 42 U.S.C. §1983. Even if defendants violated certain internal prison policies, they do not state federal constitutional claims and cannot, alone, form the basis for a federal claim under 42 U.S.C. §1983. *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995)(holding "it is established beyond peradventure that a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a §1983 claim."). *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Quintero de Quintero v. Aponte-Roque*, 974 F.2d 226, 230 (1st Cir. 1992); *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992) ("It is bedrock law in this circuit, . . . that violations of state law -- even where arbitrary, capricious, or undertaken in bad faith -- do not, without more, give rise to a denial of substantive due process under the U.S. Constitution."). Only violations of the United States

Constitution provide the source for liability in a civil rights suit based under 42 U.S.C. § 1983. *Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.") (internal citation omitted). *See Morales v. Saba*, No. CV 15-10732-RGS, 2016 WL 593493, at *14 (D. Mass. Feb. 12, 2016), *appeal dismissed* (Sept. 9, 2016). Plaintiff's stringing together of a list of violations of prison regulations does not provide an independent avenue of liability under 42 U.S.C. §1983.

        b.      Plaintiff fails to state a Due Process Claim under the Fourteenth Amendment against Nelligan and Cresey

An inmate is entitled to due process protections only when an existing liberty or property interest is at stake. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A liberty interest is infringed only if the punishment inflicted upon the inmate imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. "It is well established that the Constitution does not guarantee that a 'prisoner will be placed in any particular prison.'" *Schofield v. Clarke*, 769 F. Supp. 2d 42, 49 (D. Mass. 2011)(quoting *Gonzalez–Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir.2010)). "Moreover, an inmate does not possess a protected liberty interest in preventing a transfer to a more restrictive form of confinement." *Id.* (citing *Sandin,* 515 U.S. at 484; *Dominique v. Weld,* 73 F.3d 1156, 1160–61 (1st Cir.1996)). Because plaintiff has no liberty interest in defendant Nelligan's and Cresey's classification decisions, all of plaintiff's Due Process claims relating to classification and designation fail.[2] *See Forbes v. Wall*, No. CA 14-322-

---

[2] The same is true for claims concerning plaintiff's Security Threat Group designation. The Massachusetts Appeals Court has recently held that "[t]he decision to designate the plaintiff as a member of an STG does not… implicate a liberty interest arising from the due process clause."

ML, 2014 WL 4997289, at *3 (D.R.I. Oct. 7, 2014)(dismissing complaint *sua sponte* against classification board and classification director where no liberty interest invoked by classification).

      c.  Duplicative Eighth Amendment Claim against Nelligan and Cresey

To the extent that there are Eighth Amendment claims brought against Cresey and Nelligan in this Count, such claims are brought in Count III and combined with that Count. Accordingly, as to these defendants, this Count is dismissed.

      d.  Claims Against Turco are Conclusory and Made in Supervisory Capacity

Plaintiff's claim against Turco appears to be based on his supervisory position for alleged violation of his civil rights under 42 U.S.C. § 1983. Such claims fail because the legal theory of *respondeat superior* is not applicable to civil rights claims under 42 U.S.C. § 1983. "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983. *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)). In the absence of personal involvement, a supervisor is liable for the acts of a subordinate only if (1) the subordinate's behavior results in a constitutional violation, and (2) the supervisor's action was "affirmatively linked" to the behavior only in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference. *Hegarty v. Somerset County*, 53 F.3d 1367, 1379-1380 (1st Cir. 1995). As to defendant Turco, there are no well-pleaded, non-conclusory factual allegations that Turco was

---

*Rosado v. Comm'r of Correction*, 91 Mass. App. Ct. 547 (2017)(dismissing claim brought pursuant to 42 U.S.C. §1983 because no liberty interest in STG designation).

personally involved in, aware of, or deliberately indifferent to, any of the actions complained of in the amended complaint. Accordingly, any claims against Turco under Count II are dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

        3.        Count III – Retaliation – Defendant Melendez

"It is well-settled that 'retaliation against a prisoner's exercise of constitutional rights is actionable' under Section 1983." *Morales v. Saba*, No. CV 15-10732-RGS, 2016 WL 593493, at *11 (D. Mass. Feb. 12, 2016), *appeal dismissed* (Sept. 9, 2016)(citing *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011)). To state a claim of retaliation in violation of the First Amendment to the United States Constitution, a prisoner-plaintiff must allege "1) he engaged in constitutionally protected conduct, 2) prison officials took adverse action against him, 3) with the intent to retaliate against him for engaging in the constitutionally protected conduct and 4) he would not have suffered the adverse action "but for" the prison officials' retaliatory motive." *Hudson v. MacEachern*, 94 F. Supp. 3d 59, 68 (D. Mass. 2015). In his Second Amended Complaint, plaintiff states:

> The defendant Luis Melendez IP Commander is well known in the IP Department among all DOC facilities, he share a good relationship with all subordinates in the IP Department. The defendant subordinates have launch an offensive attack against the plaintiff for challenging the security threat group custom practice overseen by the IPS department. Since the initial complaints…at least two different IPS officers have filed seven disciplinary tickets the plaintiff impeding the investigation and stacking the deck coerced of frivolous information within the D-report. The defendant is responsible for requesting permission to validate the plaintiff STG. The defendant has not provided a periodic review to determine whether plaintiff remains a security threat…It has become a personal vendetta knowing whats(sic) at stake defendant and subordinates illegal behavior and practices the defendant subordinates have shown their force, intimidation, and constent(sic)

13

> threats of filing tickets to cover up for their illegal practice in violation of …inmate management due process/equal protection violation.

Second Amend. Compl. ¶62. The claim survives screening and states a claim upon which relief may be granted. However, whether such claim survives summary judgment is an entirely different matter, and plaintiff will face a difficult burden. "Because prisoner retaliation claims are easily fabricated and pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). "Thus, in order to survive summary judgment on a retaliation claim, a prisoner must make out a prima facie case by adducing facts sufficient to show that he engaged in a protected activity, that the state took an adverse action against him, and that there is a causal link between the former and the latter." *Id.* Accordingly, Count III states a claim upon which relief may be granted.

4. Count IV – Failure to Protect – Defendants Nelligan and Cresey

"Under the Eighth Amendment, 'prison officials have a duty to protect prisoners from violence at the hands of other prisoners.'" *Lakin v. Barnhart*, 758 F.3d 66, 70 (1st Cir. 2014) (citing *Farmer v. Brennan,* 511 U.S. 825, 833 (1994)). "Not every injury suffered by one prisoner at the hands of another, however, translates into constitutional liability." *Id.* (citation and quotations omitted). "Instead, a prison official violates an inmate's Eighth Amendment right against cruel and unusual punishment based on a failure to prevent harm to the inmate only under two circumstances: the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm, and the prison official must have acted, or failed to act, with deliberate indifference to inmate health or safety. *Id.* (citation and quotations omitted). A "substantial" risk is one that is "objectively

14

intolerable," *Farmer,* 511 U.S. at 846. "Deliberate indifference" is more than mere negligence and akin to "criminal recklessness." *Burrell v. Hampshire Cty*, 307 F.3d 1, 8 (1st Cir. 2002). Here, the plaintiff's allegations are sufficient to place defendants Cresey and Nelligan on notice of plaintiff's claim that they were deliberately indifferent to the alleged risk that the Latin Kings posed to plaintiff when defendants were involved in the classification and placement processes. *See Hentschel v. Doe*, No. 16-CV-426-JL, 2017 WL 1956999, at *1 (D.N.H. Apr. 4, 2017)(unpublished opinion), *report and recommendation adopted sub nom. Hentschel v. Doe #1*, No. 16-CV-426-JL, 2017 WL 1956928 (D.N.H. May 10, 2017)(Pro se prisoner complaint stated Eighth Amendment claim for screening purposes where classification officer placed inmate in facility where particular gang posed threat to physical safety). Accordingly, Count IV states a claim upon which relief may be granted.

5. Count V – State Procedural and Regulation Violations - All Defendants

Plaintiff's claims for violations of state procedural and regulation violations are not cognizable as a violation of 42 U.S.C. § 1983 as set forth in Section (B)(2)(a). Accordingly, such claims are dismissed for the same reasons. Moreover, to the extent plaintiff attempts to make claims against Goguen and Turco based upon the length of his confinement in segregation, these appear to be conclusory, and based upon *respondeat superior* liability, not available under 28 U.S.C. §1983. Accordingly, Count V is dismissed against Turco, Goguen, Melendez, Nelligan and Cresey, pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted.

### C. Motion for Preliminary Injunction

When considering a motion for a preliminary injunction, this Court weighs four factors: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." *Jean v. Massachusetts State Police*, 492 F.3d 24, 26–27 (1st Cir.2007) (citation omitted).

The Supreme Court has held that "[p]rison administrators…should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Congress has also mandated that, with respect to prisoners seeking injunctive relief, the Court "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief…" 18 U.S.C. § 3626(a)(2). The Court is mindful that the Department of Correction is in the best position to determine the day-to-day operations of the prison.

Here, plaintiff is requesting to be released into general population where he believes he will be safe and that the Court issue an order relating to his STG status. As to his request to be released to general population, that request was ultimately granted by the Department of Correction, and therefore that request is now moot. *See* ECF No. 85, Def. Memorandum pp. 4-5; ECF No. 86, Plaintiff's Reply Brief p.1 . While plaintiff claims that his STG status *in the future might* have some impact on his housing, the *current* concern is moot as he is in general population. Apparently, the parties are in agreement that his current housing situation is acceptable. Accordingly, plaintiff's Motion for Preliminary Injunction (ECF No. 76) is <u>DENIED</u>.

**Conclusion and Order**

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's motions to supplement and amend the complaint (ECF Nos. 74 and 75) are construed as requests for clarification of the Court's May 26, 2017 Memorandum and Order, and are each hereby ALLOWED in part and DENIED in part. The motions are ALLOWED only to the extent to permit the filing of the Second Amended Complaint and add Lori Cresey as a defendant. Summons shall issue. The Second Amended Complaint is the only operative complaint. All other and further relief in the motions to amend is DENIED.

2. Plaintiff's Clarification of Exhibits and Permission for Leave to Correct Record (ECF No. 78) is construed as a motion for clarification of the Court's May 26, 2017 Memorandum and Order is hereby ALLOWED in part and DENIED in part. Plaintiff may refer to, and incorporate by reference, exhibits previously filed in this action as part of his Second Amended Complaint as set forth in that document. All other and further relief is DENIED.

3. Counts I, II, and V of the Second Amended Complaint are hereby DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state claim upon which relief may be granted. Accordingly, defendants Thomas Turco, III, and Colette Goguen are DISMISSED from this action.

4. Defendants Nelligan and Melendez shall respond to Counts III and IV of the Second Amended Complaint by October 6, 2017. Defendant Cresey shall respond within 30 days after service of the Second Amended Complaint.

5. Plaintiff's motion for Preliminary Injunction (ECF No. 76) is <u>DENIED</u>.

**SO ORDERED.**

*<u>/s/ Timothy S. Hillman</u>*
**TIMOTHY S. HILLMAN
DISTRICT JUDGE**